analysis is as most cases are. I believe that the letter which we received from the clerk asking us to be ready to talk about the Steinbaugh case was right on and Judge Seiler I know you wrote that opinion and there's much to be analyzed between the facts in this case in that case but the law is the same as when you wrote it in I believe November but nothing's changed in the law and I don't expect it to be it seems like we are pretty well settled now in this First Amendment area of the law but we're here because one man Robert Tompos who happened to be the fire chief but also was a resident of the City of Taylor and a citizen in the City of Taylor spoke to the City Council and the press as a citizen about many various serious firefighter and citizen issues the district court unfortunately did not do much analysis in this case and granted defendants motion for summary judgment and remanded the whistleblower protection act case to the state court where that now is sort of languishing When you say that Mr. Tompos spoke as a citizen, what do you base that on? I base it on, you don't, if I may, you can't just say oh a fire chief has this responsibility every fire chief has this responsibility in this particular case under this particular mayor Mr. Tompos had little authority to speak as a fire chief he was told specifically he could not speak at to the City Council that all things were to go before the mayor he was told specifically as a fire chief he could not talk to the press so when he talked to the City Council and it was only in open sessions at the end of the City Council meetings and when he spoke to the press while he was identified at the fire as a fire chief he did not identify himself as a fire chief. Was he in uniform some of those times? On tape he was in uniform I'd looked at those yesterday and you're right but it was. So someone, is it necessary, I mean isn't there a little bit of a problem with saying he was speaking as a private citizen when he shows up in his uniform to speak? If he purposely went there in his uniform in order to show himself as the fire chief I suppose that argument could be made if he happens to have his clothes on from the from the work that day then an argument another argument can be made we don't have anything in the record about that judge but I certainly can see your point but the fact of the matter is he was this mayor told him he could not do as a fire chief what he then did as a citizen. Why? Okay the mayor this is not this was not a usual type of administration. Well I mean I don't know well aren't there a lot of cases where the the legal basis you know we get into category one and so on but you know if you're in some little town and your town code creates a fire chief a lot of times the mayor is going to tell him nevertheless shut up let me handle this. But then what's your job become your job becomes you can't speak as the fire chief. So if you go out in your uniform and speak doesn't that make you insubordinate? Excuse me I'm sorry. So when you then go out in your uniform and it could be but that's not what the issue is right before the court at this point. Well it factors in. Pardon me? It factors in in some of our cases we've said you know that could be a big factor when you're looking at whether there's protected speech and and the conduct is also protected. There is the one case from last July that came down I believe Judge Straunch wrote it and in that case there was a question but that went to the causation issue I believe as I looked at that case. Here they're not the defendant is not claiming it has not claimed the and I have the case here as well if you want me to get to a judge but here the defendant is not claiming the insubordination issue. Here the I mean it is basically a question of fact but then it becomes a question of law because the courts have held that it's a question of law as to whether or not one is speaking as a citizen or not but this is not that unlike the Steinhausen case. In the Steinhausen case we had a situation where it was the fire captain and here we have the fire chief in this I mean Steinbaugh I'm sorry not. I was going to ask what is that case but it's Steinbaugh I know what that is. Thank you Judge I'm sorry I don't know why I had Hausen on the mind but thank you it's rank than your client right. Once I believe it was one step down but under their rules or their writings or standard operating agreement it stated that he was involved in setting policy of that department. Now the factual difference is and you know it's clear what the factual differences are but also the factual similarities. In that case Mr. Steinbaugh picked up the phone and called three council members and said I'm two of them he told him I'm calling as a citizen the other one he didn't say what he was calling as. However it was clear that people knew he was a fire somebody working in the fire department because the mayor after became aware of some phone calls being made contacted the fire chief and said you've got somebody in your department making these calls find out who it is. And first Mr. Steinbaugh said not me but then he admitted that it was him. So he did Judge Batchelor you're right he didn't have a uniform on but he was known as being a member of the fire department. But he also it seemed to me in that case at least he pretty clearly did what he could to make it clear that he was speaking as a private citizen. And client just just in his head that he was a private citizen. Well and my client said in one of the recordings from the City Council meeting that I'm also a citizen and a resident in this city and this is not the type of service that I came here for or that should be given to the citizens here. When you say I'm also do you mean I'm also in addition to being a fire chief I'm a citizen? Oh no he was standing next to a citizen who was talking at that time I mean that could be open to interpretation but as I saw it he had a man standing right here who was making some issues known. And so he said that he was in he was. He's in uniform at this point. He was I mean I'm not denying every three tapes. He didn't need to identify himself as also a fire chief. He didn't identify himself as a fire chief. I said he didn't need to. Probably not but the other thing is we don't know at the in the press he doesn't say I'm the fire chief. They do identify him as the fire chief but you know it's not hard to figure out in the city who the fire chief is. Just like it's not hard to fire find out who the fire captain is in the in the Steinbaugh case. But the there were serious serious concerns and defendants say that my client was talk you know trying to challenge on the budget that he was talking specifically about public and firefighter safety and everything that you you can see in the tapes or you read in the press that is where he was directed toward. So if you look at the content of the speech it is certainly a matter of political social or other concern to the community and then if you go to the balancing test between the interest of the right to basically orderly conduct of the business of the city. Talk about the Pickering test that when you're talking about balancing. The balancing test. There's there's no evidence or no even argument and I believe it's the defendant's burden to show what the disruption was. That's my term it's not a legal term. Disruption was to the city or how his words affected either his job or the operation of the department and in fact there is no proof or evidence that that happened at all. He was speaking on public safety and he continued to do his job for a period of time just like in the Steinbaugh case and he there was no disruption to city services and that's exactly what happened here. An analysis has to be done as was done in the Steinbaugh case. Judge Batchelder I recognized the uniform issue but I think everything else but for the uniform issue I think that this is a Steinhausen, Steinbaugh. I want to rewrite the law Steinhausen but Steinbaugh case and the fact of the matter is in this particular city he was prohibited from speaking as a fire chief per direction of the mayor and Amanda Banas who was his direct boss. Now in the Rose against Stevens case it suggested the Pickering balanced favors the government as a matter of law. Now how do you get around that? Because there is absolutely nothing that the government can articulate as to why it there they have any what their interest is at all in him not talking about safety of firefighters and the public. I mean that hinges on your saying though that he didn't have the fire chief wasn't in either a policymaking or a confidential position at all. No he wasn't I mean and that's what the mayor he wasn't he couldn't make it he could only follow the union contract now he could fire somebody but then the union contract he's got to follow the union contract and they can challenge it but he can't set hours he couldn't set overtime he couldn't do any of that that under the collective bargaining agreement and then the mayor comes in and and has told him that he can't he does he doesn't have nothing anything to do with the budget expect it spending up to $2,000 has no input on it he can't even go out and try to raise money to buy the firefighter suits so these fire officers don't I mean it's just the description is pretty horrific as to what can happen to them. I know my time is up but I reserve some time unless you have a question now. Thank you. Four minutes for rebuttal. Good morning police the court John Clark on behalf of the defendants in this case excuse my voice here and have a little bit of a chest cold so hopefully you can understand what I'm saying today. Bob Tompos was the fire chief of a major city department he had broad discretion and latitude in overseeing the fire department in terms of ensuring adequate fire protection advanced life support protection reporting to the mayor under a plaintiff scenario if if everything had a run through the mayor or council then only the highest executive officer would ever fall under the Elrod rule and that's just not the case and and we put you know dozens of positions in our brief similar positions where the court has determined that they in fact were policymakers. The issue of the council meetings and I've been to many of these meetings and they go on forever and ever as you can imagine all the department heads are required to be there and so he was there as a requirement as the fire chief and no he didn't identify himself as a fire chief because as somebody asked he was wearing the uniform. He always attended in the uniform? Correct absolutely just like that the police chief does just well that the other department heads typically don't don't wear uniforms public services public works parks and rec police and fire always would be in uniform and the issue about the newspaper well the only reason they went to him they didn't ask him just because he lived down on Main Street they the newspaper went to him because he was the fire chief they wanted his opinion about these budget cuts so clearly this this is before us on an appeal of a summary judgment right correct are the facts with regard to his position in dispute at this point no I don't believe so he he testified under oath that the fighter chief job duties and responsibilities are his responsibilities he testified under oath that clarifying affidavit make any difference to that testimony I don't believe because he testified both in interrogatory we asked him in interrogatories please explain your job duties responsibilities he said see the job description I took his deposition I asked him I went through these yes these are my job duties and responsibilities the mayor now deceased testified under oath that these were his job duties and responsibilities and quite frankly that the court under Elrod is should look beyond mere job titles were in this case I don't know how you can I mean he wasn't a fire chief the Steinbaugh case he was a captain he was as the court knows he obviously he was calling off hours off duties wouldn't even identify himself as a as a firefighter he kept saying I'm a citizen I have concerns about how these money is being spent with respect to the duties the things that your adversaries told us about you know how the mayor controlled him and so on are those in dispute are they in the record or both in terms of what that he said that you know you're not supposed to talk to the press you're not supposed to do certain things you can't spend more than you know X small amount of money the things that she was telling us indicated that his power and authority was very limited well in terms of speaking to the press speaking to the media there's a chain of command so certainly but I'm not asking whether it's right or wrong that he did it I'm saying is there a dispute that that's what the mayor had told him I don't believe so I don't believe so and I think it's completely appropriate again let me follow up on judge Boggs this question a little more specifically is it in the record that that's what the mayor told him or is it not in the record that that's what I believe there was testimony from this bannist that said something to the effect of you should need to stop saying those kinds of things because that's not really that that's not the position of the mayor that that's not the policy of the mayor the mayor is trying to implement a whole five million dollars it had an agreement with Department of Treasury to come out of that deficit and the only way to do it is to cut you know cities can't raise they can't raise taxes so they have to cut revenue and so as part of that they were laying off firefighters they're laying off staff in fact miss Bannis's position was ultimately eliminated the fire chief's position was ultimately taken out of the budget because the city wasn't performing advanced life support services anymore they were just being firefighters and and mr. Tom post knew that when he took the job he took the job knowing that and he was brought in to transition ALS services to a private company that's why they that's why he had that position and once that was accomplished in that budget year he was taken out of that position so you know I believe that I think does that answer your question or okay under what category in the rows against Stevens I think he would fall under one two or three yeah certainly I mean it's certainly confidential I mean he's got information you know discussions with the mayor in terms of policy things and how they're going to address these issues certainly he had discretion number four deals deals with political appointments I don't believe that one would necessarily apply but the other three I believe would apply the other case that is cited by the plaintiff is the Westmoreland decision that case again dealt with rank-and-file firefighters they actually came to a council meeting but again they they were the they were the lower-level firefighters they were not in any any supervisory position they were not in uniform they did not identify themselves as firefighters and so again I think that clearly distinguishable this was a very difficult circumstance for the mayor to deal with and to have his one of his cabinet level guys stand up at a meeting and say everything this guy wants to do is gonna hurt people it's wrong things of that nature you just can't have it you can't have it and it was very disruptive cause all kinds of problems and quite frankly the mayor in the next election lost and so there probably was impact in terms of what was said. You think it's it's fair for the underling firefighters to complain about safety but it's not fair for the fire chief to do that? Well first of all the fire chief has to get past the Alrod Branty exception as a policymaker so for he doesn't he that clearly applies here in terms of what the rank-and-file firefighters you'd have to look at the at the at the circumstances whether or not you know there's their protected speech if it was outweighs the the the orderly transit or the orderly operation of the fire department and you'd have to look at that circumstance but we don't even get to that sort of circumstance in fact the lower court didn't get there because she determined that he was a he was not entitled to protection. Also if you look at Garcetti as well in terms of the fact that he was speaking on matters within his job duties and responsibilities again the judge Parker the lower court didn't get to that but if if applied it would be dispositive and even with with the lane tightening or clarification of Garcetti he was speaking about issues within his domain he was furthering issues under his guise and supervision he wasn't talking about the parks direct department or the police department he was talking about the fire department so even with the even even with the with the with the restrictions of lane following Garcetti that the the Garcetti circumstance would apply to this matter. I think we've I've covered what I want to cover if there's any specific questions. Okay thank you very much. Bogus you have four minutes for rebuttals. I would submit to the court pages six through ten of our brief our main brief has quotes it has sites to three depositions of Amanda Bannis, Robert Tompos and former mayor Lamaran regarding the restrictions on Mr. Tompos's duties and we've laid that out. Mr. Tompos did not take on the mayor or the mayor's budget he informed the public looking at those tapes of what he said at City Council he says things like we need to work together this is not a blame game we're in this all together those are the types of things he says and then he describes the condition of the protective uniforms of the officers and how dangerous they are because they were out of date and he doesn't lay blame anywhere so this is not a disloyalty issue to the mayor or laming blame on the mayor. I don't believe and I didn't see anything in the in the briefs to this court I don't believe there was anything in the record about any responsibility of the fire chief or the member that being in the record and I don't recall seeing anything in the deposition or in the briefs to this court. Was he called upon by the council to make his ideas known to them or did he just speak out on his own at this meeting? One time there were three council meetings in the one council meeting he was asked to come up by the council chair but the other two times he just walked up during open meeting time to speak voluntarily. Right and then we've given the sites and the CDs to the court for that and the job duties and responsibilities list Mr. Tompos in his deposition talked about how those did not all impact on him how and in his affidavit he described how that was something other chiefs and probably should have been his job but it wasn't and Amanda Banas who was his direct supervisor testified that she never talked to him about his responsibilities just talked to him about what he could not do as opposed to what his responsibilities were. Again I think it's important to look at the actuality of the of here what it was here as opposed to what we perceive a fire chief's duties and responsibilities were but rather the limited ones that he had here and what his speech was really about it was not contrary to the mayor's positions in any way it was to inform the public on the problems of the safety equipment and the slow response time that unfortunately we had a there was a citizen who died. So thank you for your time unless there's any other questions I'll leave you. Thank you.